IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Charles D. Jackson, Jr., )<br>    Plaintiff, ) | |
| v. ) | 1:20cv114 (LMB/IDD) |
| M. Wade, et al., )<br>    Defendants. ) | |

MEMORANDUM OPINION

Before the Court is a motion for summary judgment filed by defendants Alisa Gregory ("Sheriff Gregory" or "defendant Gregory") and Mark Dismuke ("Deputy Dismuke" or "defendant Dismuke") (collectively "defendants") in this civil rights action filed by Virginia state prisoner Charles Jackson ("Jackson" or "plaintiff"). [Dkt. No. 22]. The complaint alleges that defendants, who are employees of the Henrico County Jail, have withheld plaintiff's "regular mail" from him since September 2018, which has hindered plaintiff's ability to participate in ongoing legal matters and has violated his rights under the First, Sixth, and Eighth Amendments. [Dkt. No. 7]. Although defendants style their motion as one for summary judgment, the majority of their arguments address the sufficiency of the allegations in the complaint. [Dkt. No. 23]. Nevertheless, alongside the motion, defendants have submitted evidence in support of their position that plaintiff's claims are meritless. [Dkt. No. 23]. Plaintiff has filed an opposition and also submitted evidence of his own [Dkt. Nos. 32, 35, 37, 39] to which defendants have replied [Dkt. No. 36]. This motion is therefore fully briefed and ready for consideration.

As explained below, because there is no dispute as to any material fact, defendants Gregory and Dismuke—the only two defendants to be successfully served[1]—are entitled to judgment as a matter of law. Accordingly, their motion for summary judgment will be granted.

## I. Undisputed Facts

The summary judgment record establishes the following uncontested facts. At Henrico County Jail, where plaintiff is an inmate and defendants are employed, mail is classified into two categories: "legal" and "regular." "Legal mail" is mail that has been marked as confidential and sent to an inmate from an attorney, a court, or other legal organization. Mail that does not fit this description is considered "regular mail." Defendant Dismuke, a deputy sheriff, is regularly involved in the legal mail operations of Henrico County Jail. He both receives legal mail from outside the facility and distributes that mail to inmates; however, he only rarely participates in receiving or distributing regular mail. Defendant Gregory, the Sheriff of Henrico County, has not been routinely involved with any of the mail processes that go on at the Henrico County Jail during plaintiff's incarceration there.

In his complaint, plaintiff alleges that he has not received his regular mail since September 2018. In search of a solution to this problem, plaintiff has filed several institutional grievances and request forms. See [Dkt. No. 36-2] at 28 (November 29, 2018 grievance); [Dkt. No. 35-1], [Dkt. No. 36-2] at 10-11 (September 16, 2019 grievance); [Dkt. No. 35-2] (September 21, 2019 grievance); and [Dkt. No. 35-5] (October 13, 2019 request form). Additionally, at an unspecified time between March and April 2019, plaintiff "verbally complained to ... A.

---

[1] Defendants M. Wade and Officer Miller have not been served in this action and more than ninety days have passed since the filing of the amended complaint. Accordingly, the claims against these defendants will be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 4(m).

2

Gregory about [his] mail." Plaintiff made another verbal complaint to defendant Gregory between September 21 and October 29, 2019. [Dkt. No. 35] at 1, ¶ 1.[2] On July 2, 2019, in response to one of plaintiff's complaints, Sheriff Gregory logged a note in her cell phone indicating that plaintiff had "grievances about deputy and medical." [Dkt. No. 36-6].

In contrast to the alleged problems with his regular mail, the record shows that plaintiff has received his legal mail with almost no complications. Specifically, the evidence shows that plaintiff received and signed for legal mail on nearly fifty different occasions between May 2018 and October 9, 2020, the day defendants filed their motion for summary judgment. [Dkt. No. 23-2]. The only evidence showing a problem with legal mail is a September 4, 2020 grievance in which plaintiff claimed that Deputy Dismuke failed to provide plaintiff with the envelope in which a piece of legal mail had been sent. [Dkt. No. 35-3]. A jail official named Major Latham responded to the grievance, stating that plaintiff would be provided a copy of the envelope, which contained the post mark date and the shipping identification code, information plaintiff had requested. [Id.]. On another occasion in July or August 2020, a piece of mail from plaintiff's attorney, Stephen Mutnick ("Mutnick"), was mistakenly returned to its sender bearing a notation that plaintiff was deceased. [Dkt. No. 35-13].

During the time in which plaintiff claims he did not receive all of his mail, he was facing criminal prosecution in the Circuit Court for the County of Henrico. [Dkt. No. 23-6]. On January 13, 2020, represented by Mutnick, plaintiff entered an Alford plea to a charge of possession with intent to distribute a controlled substance. [Id.].

---

[2] Plaintiff does not provide any further detail with respect to the content of these complaints. [Dkt. No. 35].

3

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial ... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## III. Analysis

A deferential reading of the operative complaint reveals that plaintiff seeks relief under the First, Sixth, and Eighth Amendments of the Constitution.

### A. *First and Sixth Amendments*

Although plaintiff does not thoroughly explain the basis of his claims, it appears that he seeks relief under these amendments based on theories of mail tampering and his ability to access the courts.

The basis for plaintiff's mail tampering claim is his belief that defendants have prevented him from receiving his regular mail since September 2018.[3] [Dkt. No. 7]. Because prisoners

---

[3] Plaintiff fully concedes that he has not faced any difficulty receiving his legal mail. [See Dkt. No. 35-1] (grievance stating "I do receive legal mail but I didn't say anything about legal mail").

4

retain at least a limited First Amendment right to send and receive mail, Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989), unjustified interference with an inmate's written correspondence may form the basis of a constitutional claim under § 1983, Altizer v. Deeds, 191 F.3d 540, 549 (4th Cir. 1999). Where a prison official "regularly and unjustifiably interfere[s] with" an inmate's mail, a prisoner may be entitled to pursue relief under the First Amendment. See Crisano v. Grimes, No. 1:19cv1612, 2020 WL 1919913, at *6 (E.D. Va. Apr. 20, 2020) (quoting Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)).

Here, plaintiff has submitted very little evidence in support of his claim that he has been denied his regular mail since September 2018. In fact, plaintiff has submitted evidence that is directly contrary to this allegation and shows that he routinely received regular mail, whether it was addressed to him or to another inmate. This evidence comes in the form of an affidavit from inmate Carlos Anderson in which Anderson attests that he saw "Jackson receive two letters from Fatina Allen ... between May 14th and 28th 2019." [Dkt. No. 37]. Plaintiff additionally submitted several letters from Fatina Allen that he received in envelopes addressed both to him and to inmate Pablo D. Padron. [Dkt. Nos. 35-4; 35-7 – 35-12]. Finally, plaintiff submitted a letter—dated August 27, 2019 and addressed to him—that he received from the United States Postal Service. [Dkt. No. 35-7]. On this basis, plaintiff's allegations that he did not receive any regular mail between September 2018 and the filing of this suit are demonstrably untrue.

But even assuming that plaintiff was denied his regular mail on the four occasions for which he filed grievances, such denials would not constitute a violation of his rights under the First Amendment because "[i]solated or inadvertent incidents of lost mail, mail tampering, or the

---

In response to the motion for summary judgment, plaintiff goes as far as to admit that "legal mail wasn't part of [his] complaint." [Dkt. No. 39].

5

mishandling of mail are not actionable under § 1983." Wilson v. United States, 332 F.R.D. 505, 525 (S.D. W. Va. 2019) (citing Lewis v. Casey, 518 U.S. 343, 351 (1996); Pearson v. Simms, 345 F. Supp. 2d 515, 519 (D. Md. 2003), aff'd 88 F. App'x 639 (4th Cir. 2004) ("[O]ccasional incidents of delay or non-delivery of mail" are not actionable under § 1983.")).

Moreover, to the extent plaintiff was denied his regular mail at all, there is no evidence that defendants Gregory or Dismuke played any role in this denial. Indeed, defendants have submitted evidence that Deputy Dismuke is responsible for *legal* mail operations and plays little to no part in the gathering or distribution of regular mail. [Dkt. No. 23-1]. Plaintiff has not submitted any evidence to create a factual dispute with regard to Dismuke's responsibilities; instead, in his opposition, plaintiff merely states in an unsworn statement that "Officer M. Dismuke is not the only one named in this complaint. Officer Miller was also named and both are personally involved." [Dkt. No. 39, ¶ 4]. This kind of unsworn, conclusory statement does not qualify as admissible evidence. Moore v. Shaw, No. 5:13cv130, 2015 WL 1280954, at *4 (N.D. W. Va. Mar. 20, 2015) ("[U]nsworn statements alone generally are not admissible on summary judgment as to contradicting sworn affidavits and declarations.") (citing Edens v. Kennedy, 112 F. App'x 870, 877 (4th Cir. 2004)). Lacking admissible evidence tying defendant Dismuke to problems with plaintiff's regular mail, there is no basis on which to hold this defendant liable for any disruptions of that mail. Cf. Taylor v. Oney, No. 04-2062, 2006 WL 2466078, at *2 (3d Cir. Aug. 24, 2006) (upholding dismissal of claim where plaintiff "failed to produce any evidence of the personal involvement of any of the individuals in the opening of his legal mail").

Although there are no allegations or evidence that Sheriff Gregory participated *directly* in screening, holding, or delivering plaintiff's mail, plaintiff has provided a sworn statement that he

6

verbally complained to her about these issues on two occasions—once in spring 2019 and again in autumn of that year. Accordingly, it appears that plaintiff seeks to hold defendant Gregory liable in her supervisory capacity. To prevail on this claim, a prisoner-plaintiff must show (1) that the supervisor knew his or her subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) that the supervisor's response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between the supervisor's inaction and the constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks and citations omitted).

Although plaintiff has introduced evidence that shows he twice complained to defendant Gregory about not receiving mail, that evidence does not implicate any subordinate officers, let alone demonstrate that Gregory was on notice of a "pervasive and unreasonable" pattern of behavior by those officers. Nor does plaintiff's evidence speak to any causal connection between Gregory's alleged inaction and a violation of plaintiff's constitutional rights. Where there is not "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," "there is no issue for trial," and entry of summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).[4]

---

[4] As stated previously, it appears that plaintiff has waived any claim with respect to tampering of his legal mail. Even if he had not, any such claim would be meritless. Plaintiff describes only two instances in which his legal mail was not successfully delivered to him: (1) the September 2020 incident in which plaintiff was not given the envelope for a piece of legal mail he did receive and (2) the July/August 2020 incident in which mail from his attorney was returned to the attorney indicating that plaintiff was no longer alive. Both of these incidents occurred after April 29, 2020, the date plaintiff filed his amended complaint. Plaintiff has not moved to amend his complaint to include these incidents. As a result, they do not provide any basis for liability against the named defendants. See, e.g., Abbott v. Gordon, No. CIV.A. DKC 09-0372, 2011 WL 828646, at *19 (D. Md. Mar. 7, 2011) ("[C]onduct occurring after the time the complaint was filed may not provide a basis for liability.").

Plaintiff's access to courts claim, which the Court construes as primarily a Sixth Amendment claim, is also without merit. Among the rights protected by the Sixth Amendment is the right "to have the assistance of counsel for his defence." U.S. Const. amend. VI. To succeed on an access to courts claim, a prisoner-plaintiff must demonstrate that prison officials have frustrated or impeded a nonfrivolous legal claim such that they have caused a prisoner-plaintiff "actual injury." Lewis v. Casey, 518 U.S. 343, 353 (1996). An "actual injury" requires a plaintiff to suffer "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim." Id. at 348. Plaintiff alleges that his inability to receive mail containing legal research prevented him from being able to file a motion to dismiss or to suppress evidence in his state criminal proceedings. The summary judgment record makes clear that plaintiff was represented by counsel during those proceedings, and there is no reason to believe counsel could not have filed such motions if he felt they were appropriate. "It is well-established that representation by counsel negates a prisoner's claim of lack of access to the courts." Hundley v. Thomas, No. 5:17-ct-3110, 2017 WL 6759609, at *2 (E.D.N.C. Nov. 17, 2017) (citing Hause v. Voight, 993 F.2d 1079, 1084 (4th Cir. 1993) (prisoner's right to meaningful court access may be satisfied by providing prisoner with "adequate assistance from persons trained in the law")). Defendants are thus entitled to judgment as a matter of law with respect to this claim.

To the extent plaintiff seeks to argue that he was denied the ability to retain an attorney to represent him in post-conviction proceedings, it is equally clear that his rights have not been violated, for "[t]here is no right to counsel in post-conviction proceedings." Hagie v. Pinion, No. 91-7518, 995 F.2d 1062 (4th Cir. June 7, 1993) (citing Pennsylvania

v. Finley, 481 U.S. 551, 556-57 (1987)). For these reasons, judgment will enter in defendants' favor as to this claim.

### B. *Eighth Amendment*

The complaint invokes the Eighth Amendment almost in passing, claiming only that defendants have treated plaintiff cruelly and unusually by screening his mail because this "keep[s] him from the comfort [and] contact of [his] family" as he "ha[s] no money to put on the phone" to call them. [Dkt. No. 7]. This claim is clearly deficient because, as discussed above, there is no evidence demonstrating that either Sheriff Gregory or Deputy Dismuke were responsible for withholding plaintiff's mail. And even if defendants had withheld his mail, such actions would run afoul of the First and not the Eighth Amendment.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). To prevail on a conditions of confinement claim, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials. De'lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To withstand a summary judgment motion regarding a prison conditions claim, the nonmovant must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of such injury. Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). Because plaintiff has not produced any such evidence, his Eighth Amendment claim is without merit and defendants are therefore entitled to judgment in their favor on this issue.

## IV. Conclusion

For the reasons stated above, defendants' Motion for Summary Judgment [Dkt. No. 22] will be granted through an Order accompanying this Memorandum Opinion, and the complaint will be dismissed as to the unserved defendants.[5]

Entered this 19th day of April 2021.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

---

[5] Through a letter-motion, plaintiff previously requested that the Court issue a subpoena to Mutnick, requiring him to produce the envelope of the letter that he mailed to plaintiff but was returned to him bearing a notation that plaintiff was deceased. [Dkt. No. 33]. Plaintiff also requested that the subpoena direct Mutnick to draft an affidavit regarding the returned mail. [Id.]. This request will be denied. First, plaintiff has submitted evidence which suggests that Mutnick destroyed the envelope in question. [See Dkt. No. 35-13]. Additionally, a subpoena can only direct an individual or entity to produce materials in their "possession, custody, or control," and thus cannot compel an entity to create a new document—like the affidavit plaintiff requests—out of whole cloth. See Fed. R. Civ. P. 45(a)(1)(A)(iii); Institutoform Technologies, Inc. v. Cat Contracting, Inc., 168 F.R.D. 630, 633 (N.D. Ill. 1996) ("Rule 45 ... does not contemplate that a non-party will be forced to create documents that do not exist."). Moreover, even if Mutnick provided an affidavit, it would not make a difference to the analysis of plaintiff's complaint because he cannot link that one event to either defendant, he has not shown any prejudice, and the incident occurred after he filed the complaint.